**THE LAW OFFICES OF C.R. HYDE, PLC**
**325 W. FRANKLIN STREET, SUITE 103**
**TUCSON, ARIZONA 85701**
**TELEPHONE: (520) 270-1110**
**SBA # 22512**
**Attorney for Debtor**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | In Proceedings under Chapter 11 |
| | Case No. 4:15-bk-02229-SHG |
| DAVID B. KARMEL, | **FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION** |
| Debtor. | Filed on December 12, 2016 |

## CHAPTER 11 PLAN OF REORGANIZATION FOR DEBTOR

ARTICLE I
DEFINITIONS

Section 1.1    Definitions …………………………………………………………………...3

ARTICLE II
TREATMENT OF ADMINISTRATIVE EXPENSES

Section 2.1    Administrative Expenses…………………………………………………7

ARTICLE III
CLASSIFICATION OF CLAIMS AGAINST AND DEBTOR'S INTEREST

Section 3.1    Summary. ...................................................................................9
Section 3.2    Classification and Treatment of Claims and Debtor's Interest. ...........................9
Section 3.2.1    Class 1 – Priority Tax Claims ...................................................9
Section 3.2.2    Class 2 – Secured Tax Claims ...................................................11
Section 3.2.3    Class 3 – Secured Claim of Wells Fargo (Sylvia)………………………………… 12
Section 3.2.4    Class 4 – Secured Claim of Wells Fargo (Alvin First Position Lien)……………12
Section 3.2.5    Class 5 – Secured Claim of Wells Fargo (Alvin Second Position Lien)………..12
Section 3.2.6    Class 6 – General Unsecured Claims ...........................................13
Section 3.2.7    Class 7 – Contingent, Unliquidated, Disputed Claims…………………………..14
Section 3.2.8    Class 8 – Debtor's Interest ..................................................14

1

## ARTICLE IV
## ACCEPTANCE OR REJECTION OF THE PLAN

Section 4.1    Each Impaired Class Entitled to Vote Separately .................................................14
Section 4.2    Class Acceptance Requirement.............................................................................15
Section 4.3    Cramdown.............................................................................................................15

## ARTICLE V
## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 5.1    Means for Implementation of the Plan....................................................................15

## ARTICLE VI
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED AND DISPUTED CLAIMS

Section 6.1    Resolution of Disputed Claims .............................................................................16

## ARTICLE VII
## EFFECTS OF PLAN CONFIRMATION

Section 7.1    Effect of Confirmation .........................................................................................17

## ARTICLE VIII
## GENERAL PROVISIONS AS RELATING TO THE CONTENTS OF THE PLAN

Section 8.1    General Provisions..................................................................................................17
Section 8.2    Provisions for the Assumption or Rejection
                of Executory Contracts and Unexpired Leases ……………………………………18

## ARTICLE IX
## QUARTERLY FEES AND REPORTS

Section 9.1    Quarterly Fees and Reports……………………………………………………18

## ARTICLE X
## IMPLEMENTATION AND CONSUMMATION OF PLAN

Section 10.1   Implementation and Consummation of Plan……………………………………18

## ARTICLE XI
## RETENTION OF JURISDICTION

Section 11.1   Retention of Jurisdiction…………………………………………………………...20

**INTRODUCTION**

David Karmel, as debtor and debtor in possession (the "Debtor") in the above-captioned Chapter 11 Case hereby respectfully proposes the following plan of reorganization (the "Plan") under chapter 11 of the Bankruptcy Code. All capitalized terms used in the Plan are defined either in section 101 of the Bankruptcy Code or in Article I below.

**ARTICLE I**
**DEFINITIONS**

**Section 1.1**      **Definitions**.

As used in the Plan, the following terms shall have the respective meanings specified below:

"Administrative Expense" means any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtor, any actual and necessary costs and expenses of operating the business of the Debtor, any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business, amounts owed to vendors providing goods and services to the Debtor during the Chapter 11 Cases, and tax obligations incurred after the Commencement Date, and all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under sections 328, 330, 331 and/or 503 of the Bankruptcy Code, whether fixed before or after the Effective Date.

"Administrative Expense Bar Date" is the date by which applications for Administrative Expenses, as defined above, must be filed in the Debtor's Bankruptcy Case. Such claims shall be filed by the date that is no more than sixty (60) days from the Effective Date of the Plan as defined herein.

3

"Allowed" means, with reference to any Claim or Administrative Expense, (a) allowed pursuant to the Plan, (b) not Disputed, (c) listed by the relevant Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (d) compromised, settled, Allowed or otherwise resolved pursuant to a Final Order, (e) if Disputed, has been allowed by a Final Order, or (f) asserted by a timely filed proof of Claim or Administrative Expense (or motion for Administrative Expense) as to which no timely objection has been or is interposed (as determined in accordance with Section 6.1 of the Plan or any applicable period of limitation fixed by the Bankruptcy Code, or the Bankruptcy Rules, or the Bankruptcy Court); provided, however, that Claims allowed pursuant to an order of the Bankruptcy Court solely for the purpose of voting to accept or reject the Plan shall not be considered "Allowed Claims" hereunder.

"Claim" means a "Claim" as defined in section 101(5) of the Bankruptcy Code, against any one or more of the Debtor, or its property, whether or not asserted.

"Class" means a category of holders of Claims or Equity Interests as set forth in Article III of the Plan, classified by the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

"Commencement Date" means the date of filing of its voluntary petition for relief under the Bankruptcy Code.

"Confirmation Date" means the date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Chapter 11 Case.

4

"Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"Debtor" means each Debtor, collectively, including, where applicable, such entity or persons in their capacity as debtor-in-possession in the Chapter 11 Case pursuant to sections 101, 1107(a) and 1108 of the Bankruptcy Code.

"Deficiency Claim" means that portion of a Claim secured by a lien on property in which the estate has an interest that is determined, pursuant to section 506(a) of the Bankruptcy Code or through agreement, to exceed the value of the claimant's interest in such property.

"Disclosure Statement" means the disclosure statement relating to the Plan as amended from time to time, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

"Effective Date" means the first day on which the Plan become effective in accordance with its terms and the Confirmation Order.  The Effective date of the Plan shall be the first business day that is at least fourteen (14) days from the entry of the Confirmation Order.

"Equity Interest" means any share of common or preferred stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest.

"Plan" means, the chapter 11 plan of reorganization for the Debtor, including all applicable exhibits and schedules annexed hereto or associated herewith that shall be filed with

5

the Bankruptcy Court, as altered, amended or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

"Priority Tax Claim" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(I) and 507(a)(8) of the Bankruptcy Code.

"Pro Rata Share" means the proportion that the amount of any Claim in a particular Class against a particular Debtor bears to the aggregate amount of all Claims in such Class against that particular Debtor, including the estimated Allowed amount of any Disputed Claims in such Class.

"Secured Claim" means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of a Debtor in and to property of the relevant estate, to the extent of the value of the holder's interest in such property as of the relevant determination date, or (b) Allowed as such pursuant to the terms of the Plan (subject to the Confirmation Order becoming a Final Order).

**Section 1.2**   <u>**Interpretation and Construction of Terms**</u>.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

6

Any term used in the Plan that is not otherwise defined shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

Except as otherwise expressly provided herein, all references to "$" or "dollars" shall be deemed to be references to the lawful currency of the United States of America.

## ARTICLE II

## TREATMENT OF ADMINISTRATIVE EXPENSES

**Section 2.1** **Administrative Expenses**.

Except to the extent that a holder of an Allowed Administrative Expense agrees to less favorable treatment, the Debtor shall pay each Allowed Administrative Expense in full and in cash on, or as soon as is reasonably practicable after, the later of (i) the Effective Date, or (ii) the date such Administrative Expense otherwise would become due in the ordinary course of business.

All requests for payment of Administrative Expenses that accrued on or before the Effective Date other than Administrative Expenses that have been paid or that relate to payment of professionals must be filed with the Court and served on counsel for the Debtor by the Administrative Expense Bar Date. Any requests for payment of Administrative Expenses that are not properly filed and served by the Administrative Expense Bar Date shall not appear on the register of claims and shall be disallowed automatically without the need for any objection from the Debtor or the Reorganized Debtor or any action by the Bankruptcy Court. All Administrative Expenses incurred in the ordinary course shall be paid in the ordinary course by the Debtor or the Reorganized Debtor without the need or requirement for the creditor to file a motion, application or claim for allowance of payment thereof.

The Debtors shall have the right to object to any Administrative Expense within 30

7

days after the Administrative Expense Bar Date, subject to any extensions granted by the

Bankruptcy Court to the Administrative Expense Bar Date.  Unless the Debtors or the

Reorganized Debtors objects to a timely-filed and properly served Administrative Expense, such

Administrative Expense shall be deemed Allowed in the amount requested.  In the event that the

Debtors or the Reorganized Debtors object to an Administrative Expense the parties may confer

to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such

Administrative Expense should be allowed and, if so, in what amount.

### Section 2.2      Professional Compensation and Reimbursement Claims.

Any entity seeking an award by the Bankruptcy Court of compensation for services

rendered and/or reimbursement of expenses incurred through and including the Effective Date

under sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code must file an

application for allowance of such compensation and/or reimbursement be paid by or on behalf of

the Debtors or Reorganized Debtors, in full, in Cash, in such amounts as are Allowed, upon

either (a) on the Effective Date or (b) such other terms as may be mutually agreed upon by the

professional and the Debtors or Reorganized Debtors.   Notwithstanding any of the foregoing,

the applicable Debtors or Reorganized Debtors shall assume all post-petition liabilities, fees and

expenses for, and make payment in the ordinary course to any professional retained by the

Debtor in the ordinary course.  After the application of Debtors' advanced fee, counsel

anticipates attorney's fees and costs to not exceed $20,000.00 up to the time of the Confirmation

Order.

8

**ARTICLE III**
**CLASSIFICATION AND TREATMENT**
**OF CLAIMS AND DEBTOR'S INTEREST**

**Section 3.1** <u>Summary</u>.

Claims against the Debtors, other than Administrative Expenses are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

**Summary of Classification and Treatment of Classified Claims and Equity Interests**

| Class | Description of Claim | Status | Entitled to Vote |
|-------|---------------------|--------|------------------|
| 1 | Priority Tax Claims | Impaired | Yes |
| 2 | Secured Tax Claims | Impaired | Yes |
| 3 | Secured Claim of Wells Fargo (Sylvia) | Impaired | Yes |
| 4 | Secured Claim of Wells Fargo (Alvin 1) | Impaired | Yes |
| 5 | Secured Claim of Wells Fargo (Alvin 2) | Impaired | No |
| 6 | General Unsecured Claims | Impaired | Yes |
| 7 | Contingent, Unliquidated or Disputed Claims | Impaired | Yes |
| 8 | Debtor's Interest | Impaired | No |

**Section 3.2** <u>Classification and Treatment of Claims and Debtor's Interest</u>.

3.2.1 <u>Class 1 – Priority Tax Claims</u>

(a) *Classification, Impairment and Voting*. Class 1 consists of Allowed Priority Tax Claims. Class 1 is Impaired by this Plan. Each Holder of an Allowed Priority Tax Claim is entitled to vote to accept or reject the Plan.

(b) *Treatment*. Existing claims in this Class include the Priority Tax Claim of the

9

Internal Revenue Service and the Arizona Department of Revenue ("AZDOR"). The holders of claims in this Class shall receive, in full and complete satisfaction, settlement and release of such Claims payments, beginning on the first business day of the month following the Effective Date monthly payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with a rate of interest determined under applicable non-bankruptcy law pursuant to section 511 of the Bankruptcy Code or such other amount as determined by the Bankruptcy Court in the Confirmation Order, over a period not exceeding five (5) years after the Order For Relief which was March 4, 2015. Payments to the AZDOR shall be made in graduated increments, with the first twelve (12) payments under the Plan in the amount of $1,000 per month, the next twelve (12) payments under the Plan in the amount of $1,500 per month, the next (12) twelve payments in the amount of $2,000 per month, and continuing thereafter in the amount of $2,500 per month until paid in full.

In the event the Debtor defaults on any payment due to the holder of a Class 2 Claim as required under the confirmed plan, and in the event the Debtor fails to cure said default within thirty days after written notice of the default is mailed to the Debtor and the Debtor's attorney, the entire imposed liability together with any unpaid current liabilities, shall become due and payable immediately. The holders of Class 1 Claims may collect unpaid liabilities that become due as a result of the default through the administrative collection provisions or the judicial remedies as set forth in the Internal Revenue Code and applicable state law. Holders of Class 1 claims shall not be required to seek a modification from the automatic stay to collect any tax liabilities that were not discharged by the confirmation of the plan and from property that has revested with the Debtor.

10

### 3.2.2 **Class 2 – Secured Tax Claims**

(a) *Classification, Impairment and Voting.* Class 2 consists of Allowed Secured Tax Claims. Class 2 is Impaired by this Plan. Each Holder of an Allowed Secured Tax Claim is entitled to vote to accept or reject the Plan.

(b) *Treatment.* Existing claims in this Class include the Secured Tax Claim of the Arizona Department of Revenue. The holders of claims in this Class shall receive, in full and complete satisfaction, settlement and release of such Claims payments, beginning on the first business day of the month following the Effective Date monthly payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with a rate of interest determined under applicable non-bankruptcy law pursuant to section 511 of the Bankruptcy Code or such other amount as determined by the Bankruptcy Court in the Confirmation Order, over a period not exceeding five (5) years after the Order For Relief which was March 4, 2015.

In the event the Debtor defaults on any payment due to the holder of a Class 2 Claim as required under the confirmed plan, and in the event the Debtor fails to cure said default within thirty days after written notice of the default is mailed to the Debtor and the Debtor's attorney, the entire imposed liability together with any unpaid current liabilities, shall become due and payable immediately. The holders of Class 2 Claims may collect unpaid liabilities that become due as a result of the default through the administrative collection provisions or the judicial remedies as set forth in the Internal Revenue Code and applicable state law. Holders of Class 2 claims shall not be required to seek a modification from the automatic stay to collect any tax liabilities that were not discharged by the confirmation of the plan and from property that has revested with the Debtor.

### **Class 3 – Secured Claim of Wells Fargo (Sylvia)**

(a) *Impairment and Voting.* Class 3 is impaired by the Plan. Holders of claims in

Class 3 are entitled to vote to accept or reject the Plan.

(b) *Treatment*. Existing claims in this Class include the Secured Claim of Wells Fargo Bank, N.A. ("Wells Fargo") with respected to the Debtor's real property at 2534 Sylvia Street, Tucson, AZ 85716 ("Sylvia"). Wells Fargo shall have an allowed secured claim in the amount of $95,000.00. Commencing on the first day of the month following the Effective Date, and for a period of thirty (30) years thereafter, the Debtor shall tender monthly payments to Wells Fargo in the amount equal to an amortization of Wells Fargo's secured claim at four (4) percent interest per annum. Wells Fargo filed a Proof of Claim (Claim #6) for a mortgage on the property in the amount of $134,762.85. Therefore, Wells Fargo shall have an allowed unsecured claim of $39,762.85 and shall be entitled to participate in Class 6 as a General Unsecured Creditor.

### 3.2.4 Class 4 – Secured Claim of Wells Fargo (Alvin First Position Lien)

(a) *Impairment and Voting*. Class 4 is impaired by the Plan. Holders of claims in Class 4 are entitled to vote to accept or reject this Plan.

(b) *Treatment*. Existing claims in this Class include the Secured Claim of Wells Fargo Bank, N.A. ("Wells Fargo") with respected to Wells Fargo's First Position lien in the Debtor's real property at 8041 E. Alvin Rd. Tucson, AZ 85750 ("Alvin"). Wells Fargo shall have an allowed secured claim in the amount of $375,000.00. Commencing on the first day of the month following the Effective Date, and for a period of thirty (30) years thereafter, the Debtor shall tender monthly payments to Wells Fargo in the amount equal to an amortization of Wells Fargo's secured claim at four (4) percent interest per annum. Wells Fargo filed a Proof of Claim (Claim #8) with respect to its Class 4 Claim in the amount of $396,066.72. Therefore,

12

Wells Fargo shall have an allowed unsecured claim of $21,066.72 and shall be entitled to participate in Class 6 as a General Unsecured Creditor.

### 3.2.5   **Class 5 – Secured Claim of Wells Fargo (Alvin Second Position Lien)**

(a)   *Impairment and Voting*. Class 5 is not given any treatment under the plan and Holders of Class 5 claims shall not be entitled to Vote as a member of Class 5. Holders of claims of Class 5 are entitled to vote to accept or reject this Plan as members of Class 6.

(b)   *Treatment*. The treatment of the Wells Fargo Second Position Lien on the Alvin Property shall be avoided as an unsecured junior lien through an adversary proceeding. This is a condition of the Class 4 treatment as shall be stipulated and agreed to by Wells Fargo and the Debtor.

### 3.2.6   **Class 6 – General Unsecured Claims**

(a)   *Classification, Impairment and Voting*.  Class 6 consists of the Allowed General Unsecured Claims of Unsecured Creditors.  Class 6 is Impaired under the Plan.  Holders of a Class 6 Claims are entitled to vote to accept or reject this Plan.

(b)   *Treatment*.  The Holders of Class 6 Claims shall receive their Pro Rata share of a total of $6,000.00, to be paid $100 per month for sixty (60) months, commencing on the Effective Date.  Payment on Class 6 Claims shall be mailed to the address of the creditor on the Proof of Claim (or, if Allowed pursuant to the Debtor's Schedules, to the address on the Schedules), unless the creditor Files a change of address notice with the Bankruptcy Court. Any check mailed to the proper address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void and the funds may be retained by Debtor.

**Class 7 – Contingent, Unliquidated and Disputed Claims**

(a) *Impairment and Voting*. Class 7 consists of the Allowed Claims that are either contingent, unliquidated, disputed, or any combination of the foregoing, claims in the Debtor. No known claims in this category are known to the Debtor.

(b) *Treatment*. Class 7 creditors shall receive no distribution under the Plan. In the event that any claims in Class 7 become non-contingent and unliquidated prior to the Effective Date, such claims shall be entitled to participate in Class 6.

3.2.8 **Class 8 – Debtor's Interest**

(a) *Classification, Impairment and Voting*. Class 8 consists of the interests of the individual Debtor in property of the Estate. Class 8 is Impaired under the Plan, but is not entitled to vote to accept or reject this Plan.

(b) *Treatment*. All Estate property shall vest in the Debtor at Confirmation of the Plan. Class 8 Holder(s) shall receive no Distributions under the Plan.

## ARTICLE IV
## ACCEPTANCE OR REJECTION OF THE PLAN

The Debtor reserves the right to seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code. To the extent that any Class votes to reject this Plan, the Debtor further reserves the right to modify this Plan in accordance with Section 12.1 below.

**Section 4.1** **Each Impaired Class Entitled to Vote Separately**.

Each Impaired Class of Claims or Interests receiving a Distribution under the Plan shall be entitled to vote separately to accept or reject the Plan. The Holders of Allowed Claims in the following Classes are entitled to vote: Class 1, Class 2, Class 3, Class 4 and Class 6.

14

**Section 4.2      Class Acceptance Requirement**.

Consistent with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in the amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**Section 4.3      Cramdown**.

If any Impaired Class of Claims fails to accept the Plan by the requisite majority, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, on the basis that the Plan is fair and equitable, does not discriminate unfairly with respect to any non-accepting Impaired Class and provides to the Holders of Claims in each Impaired Class property of a value, as of the Effective Date, equal to the Allowed Amount of such Claims, or that any Holder of a Claim or Equity Interest that is junior to such Claims shall not receive or retain any property on account of such junior Claim or Equity Interest.


**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**Section 5.1      Plan Implementation**.

Debtor shall fund the Plan using his employment income.  The Debtor shall contribute his projected disposable income to fund Plan payments.


//                    //                    //


//                    //                    //


15

# ARTICLE VI

## PROCEDURES FOR RESOLVING

## CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

**Section 6.1** **Resolution of Disputed Claims**.

6.1.1 *Objections*. As of the Effective Date, the Reorganized Debtor shall reserve the sole right, to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 328, 330, 331 and 503 of the Bankruptcy Code), to make, file and prosecute objections to Claims. The Reorganized Debtors shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable (unless such Claim was already the subject of a valid objection by the Debtors), but in no event shall the service of such an objection be later than one (1) year after the Effective Date, unless such date is extended by order of the Bankruptcy Court. The Bankruptcy Court, for cause, may extend the deadline on the *ex parte* request of the Reorganized Debtors.

6.1.2 *Estimations*. The Debtor or the Reorganized Debtor may, at any time, request the Bankruptcy Court to estimate any Claim, pursuant to section 502(c) of the Bankruptcy Code, regardless of whether or not the Debtors previously have objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim during litigation concerning any objection to such Claim.

6.1.3 *Deadline to File Objections to Claims*. Any objections to Claims shall be filed no later than the applicable Claims Objection Bar Date.

//                    //                    //

16

**ARTICLE VII**
**EFFECTS OF PLAN CONFIRMATION**

**Section 7.1** <u>**Effect of Confirmation**</u>.

Except for the continuing liens, claims, rights and interests of the secured creditors against the Debtor, his estate, and the property as described in the Plan and as permitted in the Confirmation Order, upon Confirmation of the Plan of Reorganization and the Debtor's completion of payments under the Plan, the Debtor shall seek an order of discharge from the bankruptcy court. Such an order shall act as a discharge of any and all debts of the Debtor that arose any time before confirmation, including, but not limited to, all principal and all interest accrued thereon, pursuant to section 1141(d)(5) of the Bankruptcy Code. Such a discharge shall be effective as to each claim, regardless of whether a proof of claim thereof was filed, whether the claim is an allowed claim or whether the holder thereof votes to accept the Plan.

**ARTICLE VIII**

**GENERAL PROVISIONS AS RELATING**

**TO THE CONTENTS OF THE PLAN**

**Section 8.1** <u>**General Provisions**</u>.

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. These "cram-down" provisions for confirmation of a plan despite the non-acceptance of one or more impaired class of claims or interests are set forth in 11 U.S.C. 1129(b) of the Bankruptcy Code.

If a class of impaired claim(s) rejects the Plan, Debtor reserves the right to seek confirmation of this Plan by a "cram-down" of such non-accepting class pursuant to Section 1129(b) of the Bankruptcy Code. In the event the Court declines to impose a cram-down on a non-

17

accepting class unless certain modifications are made to the terms and conditions of such class's treatment under this Plan, Debtor reserves the right, without re-solicitation to the extent permitted by the Bankruptcy Code, to propose such modification and to confirm this Plan by any required modifications, provided such modifications do not result in total extinguishment of the non-accepting class's claim.

**Section 8.2** **Provisions for the Assumption or Rejection of Executory Contracts and Unexpired Leases** .

(None).

**ARTICLE IX**

**QUARTERLY FEES AND REPORTS**

**Section 9.1** **Quarterly Fees and Reports.**

Debtors shall continue to pay quarterly fees to the U.S. Trustee until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding. Debtors shall continue to file monthly operating reports until such time as the Court enters an Order confirming this Chapter 11 Plan of Reorganization and/or the end of the calendar quarter in which the Plan was confirmed. At such time, Debtors shall cease filing monthly operating reports and shall begin filing quarterly post-confirmation reports. These quarterly reports shall be filed until such time as a Final Decree has been entered in this matter by the Court, closing the Chapter 11 Case.

**ARTICLE X**

**IMPLEMENTATION AND CONSUMMATION OF PLAN**

**Section 10.1** **Implementation and Consummation of Plan**.

The terms of the Plan subsequent to confirmation shall bind the Debtors, any

18

entity acquiring property under the Plan, and creditor or claimant, whether or not such creditor or claimant has accepted the Plan. All property of the estate shall vest in the Debtors and shall be free from attachment, levy, garnishment or execution by creditors bound by the Plan.

Subsequent to confirmation of the Plan of Reorganization, the Debtors shall continue to engage in its business as presently conducted or in such form or manner as the Debtors may deem advisable. The Plan does not provide for the liquidation of all or substantially all of the property of the estate. Notwithstanding the foregoing, however, the Debtors shall be free to operate in the ordinary course and may without further Order of the Court, convey, sell, assign, purchase, or lease any property for the benefit of the estate.

It shall be the obligation of each creditor participating under the Plan to keep the Debtors advised of its current mailing address. In the event any payments tendered to creditors are mailed, postage prepaid, address (1) to the address specified in the Debtors' schedules and statements, (2) to the address specified in any proof of claim filed by a creditor or claimant herein, or (3) to the address provided by any such creditor or claimant for purposes of distribution, and if subsequently the Post Office returns such distribution due to lack of insufficiency of address or forwarding address, the Debtors shall retain such distribution for a period of six (6) months. Thereafter, the distribution shall revert to the Debtors without further Order of the Court and be free and clear of any claim of the named distributed. The Debtors shall thereafter not be required to mail subsequent distributions to any creditor for whom a distribution has been made by the Post Office. The Debtors reserve the right to modify the Plan in accordance with section 1127 of the Bankruptcy Code. The Plan may be modified prior to confirmation provided that the Plan still complies with section 1122 and section 1123 of the Bankruptcy Code. The Plan may be modified subsequent to confirmation and before substantial consummation of the Plan under such circumstances as may warrant under section 1123 of the Bankruptcy Code. Any holder of a claim or interest that has been previously accepted or rejected under a confirmed Plan, shall be deemed to have accepted or rejected under a confirmed Plan, shall be deemed to have accepted or rejected

any subsequently modified Plan unless the holder of such claim or interest changes its acceptance or rejection of the Plan within the time fixed by the Court.

**ARTICLE XI**

**RETENTION OF JURISDICTION**

**Section 11.1  Retention of Jurisdiction.**

The Bankruptcy Court shall retain exclusive jurisdiction over all matters arising under, arising out of, or related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine any motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases, and the allowance of any Claims resulting therefrom;

(b)     To determine any and all adversary proceedings, applications, and contested matters that have been or may be commenced;

(c)     To hear and determine any timely objections to, or requests for estimation of, Claims or Administrative Expenses, including, without limitation, any objections to the classification of any Administrative Expense, Claim or Equity Interest, and to allow or disallow any Disputed Administrative Expense or Disputed Claim, in whole or in part;

(d)     To hear and determine any objections of the Creditor Representative to the Reorganized Debtor's compromise, settlement, resolution or withdrawal of any objection to a Disputed General Unsecured Claim;

(e)     To resolve disputes as to the ownership of any Administrative Expense, Claim, or Equity Interest;

20

(f)     To ensure that distributions to holders of Allowed Administrative Expenses and Allowed Claims are accomplished as provided herein;

(g)     To issue such orders as may be appropriate in aid of implementation and execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(I)     To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j)     To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(k)     To hear and determine disputes or issues arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, Instrument, or other document governing or relating to any of the foregoing, or any settlement approved by the Bankruptcy Court;

(l)     To recover all assets of the Debtors and property of the Debtors' estates, wherever located;

(m)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)     Modification of the Plan pursuant to section 1127 of the Bankruptcy Code, prior to the Effective Date, remedy of any defect or omission in the Plan or Confirmation Order, reconciliation of any inconsistency within the Plan and the loan documents, so as to carry out the intent and purpose of the loan documents;

(o)     To hear and determine any other matter related to the Plan and not inconsistent with the provisions of the Bankruptcy Code; and

(p)     To enter a final decree closing the Chapter 11 Case.

**Notices**.

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested to:

If to the Debtor:
David Karmel
PO Box 31135
Tucson, AZ 85751−1135

With mandatory copies to:
The Law Offices of C.R. Hyde, PLC
325 W. Franklin St., Ste. 103
Tucson, AZ 85701
Attn: C.R. Hyde

Dated:  December 12, 2016

THE LAW OFFICES OF C.R. HYDE, PLC

By: /s/ C.R. Hyde
Charles R. Hyde, Attorney for Debtor

22